United States District Court
Southern District of Texas
**ENTERED**
February 02, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| JOSE LUIS HERNANDEZ | § | |
| (TDCJ #1922945), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:22-cv-109 |
| | § | |
| BOBBY LUMPKIN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## REPORT & RECOMMENDATION

Petitioner, Jose Luis Hernandez, a state prisoner proceeding *pro se*, initiated this action on January 11, 2022, by filing a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1.) On April 1, 2022, Petitioner filed an amended petition (Dkt. No. 6) with a memorandum of law (Dkt. No. 8). On October 19, 2022, Respondent, Bobby Lumpkin, Director of Texas Department of Criminal Justice, filed a motion to dismiss with brief in support. (Dkt. No. 15.) On December 28, 2022, Petitioner filed a response to Respondent's motion to dismiss. (Dkt. No. 23.)

In summary, Petitioner seeks review of his jury conviction of two counts of attempted capital murder and three counts of aggravated kidnapping, which occurred in 2011, and went to trial in 2014. (Dkt. No. 16-12 at 64-72; Dkt. No. 16-13 at 1-6 (Judgment of Conviction by Jury).)[1]

---

[1] Respondent has filed state record along with its response. Said record is set out in Dkt. No. 16 and related filings within that entry. Citations will be in reference to said docket filing and assigned CM/ECF page numbers to the relevant docket entries.

Petitioner seeks review based on a claim of actual innocence and ineffective assistance of Trial Counsel. (Dkt. No. 8 at 6-12.) Respondent argues that the claims are time-barred from habeas review. (Dkt. No. 15 at 6-7.)

After review of the filings, record, and relevant law, and for the reasons set forth below, this Court concludes that the claims are time-barred from review; therefore, the undersigned recommends that Respondent's Motion to Dismiss (Dkt. No. 15) be **GRANTED**.

It is further recommended that Petitioner's request for transcripts (Dkt. No. 23 at 1) be **DENIED**, that Petitioner's § 2254 petition (Dkt. No. 6) be **DISMISSED with prejudice**, and that the District Court **DECLINE** to issue a Certificate of Appealability in this matter.

## BACKGROUND

On April 18, 2013, a grand jury in Hidalgo County, Texas entered an indictment charging Petitioner with two counts of attempted capital murder of a peace officer and three counts of aggravated kidnapping for events that occurred on October 30, 2011.   (Dkt. No. 16-12 at 18-20 (Indictment).) On March 27, 2014, a jury convicted Petitioner on all counts, and Petitioner was subsequently sentenced to twenty-two (22) years imprisonment. (Dkt. Nos. 16-12 at 64-72; 16-13 at 1-6.) On December 27, 2019, Petitioner filed a notice of appeal. (Dkt. No. 16-2 at 2.) On December 3, 2020, the Thirteenth Court of Appeals dismissed the appeal for lack of jurisdiction because it was untimely filed. *Id*. at 3.[2]

On March 24, 2020, the Hidalgo County Clerk's Office received Petitioner's first state habeas petition. (Dkt. No. 16-5 at 31.)[3] In Petitioner's first habeas petition, Petitioner argued

---

[2] Dkt. No. 16-2 is Memorandum Opinion issued by Texas Court of Appeals, Thirteenth District of Texas – Corpus Christi/Edinburg.  The unpublished opinion can also be found at *Hernandez v. State*, No. 13-20-00046-CR, 2020 WL 7063689 (Tex. App. Dec. 3, 2020).

[3] It is not clear when Petitioner placed the writ in the mail, but Petitioner did sign the unsworn declaration attesting to the allegations in the petition on March 15, 2022. *See also Spotville v. Cain*, 149 F.3d 374, 378

claims for ineffective assistance of counsel, wrongful suppression of *Brady* evidence, violation of double jeopardy, and actual innocence. (Dkt. No. 16-5 at 36-45.) Then, on August 20, 2022, Petitioner filed a motion to withdraw this first application. (Dkt. No. 16-6 at 1.) On September 18, 2020, the Texas Court of Criminal Appeals dismissed said writ, per curiam, and without written order. (Dkt. No. 16-7 at 1.)

On October 12, 2021, Petitioner filed a second state habeas claim. (Dkt. No. 16-13 at 21.)[4] In the second state habeas filing, Petitioner argued that he is actually innocent. (*Id.*) Like the present federal habeas petition, Petitioner argued that his claim resembled a "*Schlup*-type claim" and the evidence supporting Petitioner's application "establishes sufficient doubt about his guilt to justify the conclusion that his conviction is a miscarriage of justice." *Id.* at 26.[5] The Petitioner supported his state petition with the same evidence and case law that Petitioner has attached to this federal habeas petition. On December 22, 2021, the Texas Court of Criminal Appeals denied Petitioner's second application "on the Court's independent review of the record," without a written order.[6] (Dkt. No. 16-11.)

On January 11, 2022, Petitioner filed a federal habeas petition. (Dkt. No. 1.) In Petitioner's first petition he argues that the court never showed Petitioner proof of evidence showing that he committed the crimes. (*Id.* at 1.) Petitioner also argues that his memory was impaired due to a brain injury sustained in a car accident a year before trial, and that this, in conjunction with,

---

(5th Cir. 1998) (holding § 2254 applications deemed filed on the date the inmate gives the petition to prison officials for mailing).

[4] Again, it is not clear when the writ was placed in the mailbox, but the unsworn declaration in support of the second writ was dated October 6, 2021. (Dkt. No. 16-13 at 36.) *See supra* n3.

[5] "*Schlup*-type claim" is referencing *Schlup v. Delo*, 513 U.S. 298 (1995).

[6] AEDPA affords significant deference to a state court's resolution of factual issues. 28 U.S.C. § 2254(d)(2); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit.").

Petitioner's low IQ and education level, made Petitioner unable to understand the nature of his proceedings. (*Id.* at 2.) In support of Petitioner's argument, he attaches medical and education records. (Dkt. Nos. 1-1, 1-2, 1-3.) On April 1, 2022, Petitioner filed an amended habeas petition with this Court (Dkt. No. 6), alleging a nearly identical argument to the original petition, but with a memorandum of law supporting his claims (Dkt. No. 8).

On October 19, 2022, in response to Petitioner's habeas petition, Respondent filed a motion to dismiss. (Dkt. No. 15.) On December 28, 2022, Petitioner filed a response to Respondent's motion to dismiss, as well as a request for the Court to provide Petitioner with copies of Petitioner's state trial court transcripts. (Dkt. No. 23.)

## SUMMARY OF THE PLEADINGS

Petitioner alleges actual innocence based on evidence of his low IQ and brain injury as his primary ground for habeas relief. (Dkt. No. 6 at 7-8.)[7] Petitioner claims that he was incompetent at the time of trial, and his Trial Counsel, Richard Alamia, failed to investigate Petitioner's mental capacity, including the fact that Petitioner was involved in a head-on collision that resulted in memory loss a year before trial. (*Id.* at 8; *see also* Dkt. No. 8 at 3-4, 11.) Accordingly, Petitioner argues that Trial Counsel's failure to sufficiently investigate his competency and notify the court about his mental state "probably resulted" in his conviction. (Dkt. No. 8 at 9.) Petitioner reasons that the evidence of his involvement in a car accident prior to trial and low IQ establishes sufficient doubt about Petitioner's competency at the time of trial, undermining the constitutionality of the guilty verdict. (Dkt. No. 8 at 8-9, 11.) Further, Petitioner argues that his statement of the facts surrounding the crime establishes sufficient doubt regarding his innocence. (*Id.* at 11-12.)

---

[7] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporate by reference the earlier pleading." *Stewart v. City of Houston Police Dept.*, 372 F. App'x 475, 478 (5th Cir. 2010) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). Thus, in this matter, the amended complaint is the controlling pleading.

4

Petitioner also claims that Trial Counsel's failure to inform the court of Petitioner's low IQ and brain injury sustained in the car accident supports a claim of ineffective assistance of counsel in violation of his constitutional rights. (Dkt. No. 8 at 11.) Petitioner further alleges that, because of his mental capacity, he lacked the ability to intelligently consult with his Trial Attorney on important matters and Trial Counsel failed to consult Petitioner on matters during the proceeding. (*Id.*) Petitioner argues that mitigating facts related to Petitioner's mental capacity was not shown to the jury. (*Id.* at 12.) Thus, Petitioner concludes that if Trial Counsel had presented evidence regarding Petitioner's mental capacity, the jury would not have convicted him, as such, Petitioner was prejudiced by Trial Counsel's ineffectiveness. (*Id.* at 10.)

In support of Petitioner's allegations, he attaches several exhibits containing Petitioner's medical and education records. (*See generally* Dkt. Nos. 7, 7-1, Ex. B-D.) Petitioner's medical records show that on March 7, 2013, after being involved in a head on motor vehicle collision, Petitioner did suffer a traumatic brain injury. (*See* Dkt. No. 7-1, Ex. D at 2-3.)[8] Petitioner states that the traumatic brain injury, which occurred after the criminal conduct but a year before trial, resulted in memory loss. (Dkt. No. 6 at 7-8.) The medical records detail the nature of the injury but do not specify the long-term effects of said injury. However, the records do reflect that upon arrival to the hospital via airlift Petitioner's Glasgow Coma Scale Score ("GCS") was 4, indicating Petitioner suffered a severe head injury.[9]   (Dkt. No. 7-1, Ex. D at 8.)    Further, Petitioner's education records show that in grade school Petitioner was placed in special education classes.

---

[8] Said medical records were provided by Petitioner when he filed his petition initiating this habeas proceeding on Jan. 11, 2022. *See generally* Dkt. No. 1-1 at 19-44.

[9] According to the Center for Disease Control and Prevention (CDC), a GCS score of 8 or less is considered "severe head injury." *Glasgow Coma Scale*, Center for Disease Control and Prevention, https://www.cdc.gov/masstrauma/resources/gcs.pdf (last visited Feb. 2, 2023).

(*See generally* Dkt. No. 7, Ex. C at 10-25.) The records also show Petitioner's low IQ of 73. (Dkt. No. 7, Ex. B at 8.)[10]

Respondent filed a motion to dismiss, alleging Petitioner's claim is barred by the statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (Dkt. No. 15 at 5-7.) Respondent claims that neither statutory nor equitable tolling operate to make Petitioner's filing timely filed. (*Id.* at 7-11.) Respondent also argues that the "actual innocence" exception to the statute of limitations under *Schlup* does not apply in Petitioner's case. (*Id.* at 10-11.)

In Petitioner's response, he requests that the Respondent provide Petitioner with copies of the pretrial, trial, sentencing, and post-conviction transcripts related to his case. (Dkt. No. 23 at 1.) Petitioner's response outlines no additional arguments or claims other than those already asserted in his amended complaint. Specifically, Petitioner continues to argue that his claim mirrors a "*Schlup*-type" claim (Dkt. No. 23 at 6-8), asserts that Respondent's analysis of Petitioner's "*Schlup*" claim is unreasonable (*id.* at 8), and argues that the evidence attached to Petitioner's writ, specifically the medical and education records, is sufficient to establish Petitioner's actual innocence under *Schlup* (*id.* at 9). Petitioner further argues that Trial Counsel's failure to notify the court of these records constitutes ineffective assistance of counsel. (*Id.* at 10-11.) Petitioner continues to assert that the nature of his mental condition at the time of trial left him incompetent to understand the nature of the proceedings or effectively communicate with Trial Counsel. (*Id.* at 11.) In reference to Petitioner's statement regarding the events surrounding the crime, Petitioner notes that "after his accident [Petitioner] forgot what happened but ever since

---

[10] These records were also provided by Petitioner on Jan. 11, 2022. *See* Dkt. No. 1-1 at 1-18. The records do not indicate how Petitioner's IQ score was determined, who determined Petitioner's IQ score, or when such determination was made.

after [sic] his trial he has gradually remembered." (*Id.* at 5-6.) Petitioner alleges that because of

Petitioner's lack of memory at the time of trial, and Trial Counsel's failure to notify the court about

the nature of Petitioner's mental condition, Petitioner was found guilty "based on no evidence."

(*Id.* at 11-12.)

## APPLICABLE LAW AND ANALYSIS

### I.    28 U.S.C. § 2254

An application for a writ of habeas corpus by a person in custody under the judgment of a

state court can only be granted on grounds that he is in custody in violation of the Constitution or

laws of the United States.   28 U.S.C. § 2254(a).   Federal habeas proceedings must honor the

"presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence."

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).   Relief, therefore, is not available for any claim

decided on the merits in the state court proceedings unless the state court's adjudication of the

claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

Furthermore, "[b]efore a federal court may grant habeas relief to a state prisoner, the

prisoner must exhaust his remedies in state court.   In other words, the state prisoner must give the

state courts an opportunity to act on his claims before he presents those claims to a federal court

in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. §

2254(b)(1)(A), (c).   When a petitioner has properly raised a federal constitutional claim before the

state courts, "and the state courts have adjudicated the merits of their merits, AEDPA provides for

a deferential federal review." *Ramey v. Davis*, 314 F. Supp. 3d 785, 802 (S.D. Tex. 2018.) Further, if the claim is reviewed but the state court rejects on procedural grounds, the claim is also barred from federal habeas review. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

However, the federal bar of review in each instance can be set aside if the petitioner can establish "cause" for the noted default and "actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 82-84 (1977).

Likewise, the application must also be timely filed. Thus, while Petitioner may have exhausted his state remedies, Petitioner's petition will still be procedurally barred for review if untimely filed.

## II.    Statute of Limitations and Equitable Tolling

AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). Absent any tolling, the one-year limitation period runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

In the present action, Petitioner's judgment became final, at the latest, 30 days after the date of judgment since an appeal to the Texas Court of Appeals was not initially sought by Petitioner.[11]   Tex. R. App. P. 26.2(a)(1).   Both convictions and sentence were entered on March

---

[11] As noted, Petitioner did not file his notice of appeal until December 2019, approximately five and half years after his date of conviction and sentence. *See* Dkt. No. 16-2. The appeal was subsequently dismissed as the state appellate court did not have jurisdiction to review the case. *Id.* at 2. ("Absent a timely filed notice of appeal, a court of appeals does not have jurisdiction to address the merits of the appeal and can take no action other than to dismiss the appeal for want of jurisdiction." (citation omitted)); *see also Hernandez*, 2020 WL 7063689, at *1 (parallel citation).

27, 2014; therefore, each of the judgments became final on April 28, 2014.[12] *See Mark v. Thaler*, 646 F.3d 191, 193 (5th Cir. 2011) (noting that state conviction became final for habeas review "when the time seeking further direct review expired." (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003))). Therefore, absent any tolling, the one-year limitation period for filing a federal petition expired on April 28, 2015. 28 U.S.C. § 2254(d)(2).

Petitioner filed his state habeas petitions on or about March 13, 2020 (Dkt. No. 16-5 at 81) and October 7, 2021 (Dkt. No. 16-13 at 20), over five years past the statute of limitations period in 2015. Petitioner initiated this federal petition January 11, 2022, nearly seven years past the limitations period. (Dkt. No. 1.)

Because Petitioner's federal petition is several years past the filing deadline the possibility of both statutory tolling, under 28 U.S.C. § 2244(d)(1)(B-D), (d)(2), and equitable tolling, will be considered.

### a. Statutory Tolling

AEDPA establishes a one-year limitation period for state prisoners to file for federal habeas relief, which "run[s] from the latest of" four specified dates. 28 U.S.C. § 2244(d)(1)(A-D). The first date provided in 28 U.S.C. § 2244(d)(1)(A), the "default", was addressed above; thus, only the remaining options will be addressed below. Petitioner does not argue any of the possible specified exceptions but giving the Petitioner the benefit of the doubt, considering his *pro se* status, each possibility will be considered. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (courts "must construe the pleadings of *pro se* litigants liberally.").

### i. 28 U.S.C. § 2244(d)(1)(B)

---

[12] Because April 26, 2014, is a Saturday, the filing deadline is automatically extended to the following Monday, April 28, 2014. *See* Tex. R. App. P. 4.1(a).

Under § 2244(d)(1)(B), the one-year limitation period may begin to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."   To invoke statutory tolling under § 2244(d)(1)(B), a prisoner must show that: (1) he was subject to state action, (2) that violated the Constitution or federal law, and (3) that state action prevented him from filing a timely petition. *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).

Even when construing the pleadings liberally, there is no state impediment that justifies tolling the limitations in favor of Petitioner.   Petitioner does not allege any potential state action that prevented his ability to timely file his petition, and even when considering incarceration, tolling is not justified under § 2244(d)(1)(B). *See Barthelman v. Lumpkin*, No. CV 7:21-00146, 2022 WL 877318, at *10 (S.D. Tex. Jan. 25, 2022) (holding that incarceration is not a state action sufficient to justify tolling under § 2244(d)(1)(B) (citing *Felder v. Johnson*, 204 F.3d 168, 171 n.9 (5th Cir. 2000)), *report and rec. adopted*, *Barthelman v. Lumpkin*, No. 7:21-CV-00146, 2022 WL 874699 (S.D. Tex. Mar. 24, 2022).

Because Petitioner failed to allege any state action preventing him from timely filing the present petition, § 2244(d)(1)(B) is inapplicable to Petitioner.

### ii.   28 U.S.C. § 2244(d)(1)(C)

Under § 2244(d)(1)(C), the limitation period may begin to run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."   Petitioner does not allege any newly recognized constitutional right that would trigger § 2244(d)(1)(C) and toll the limitations period.   Consequently, Petitioner has failed to make a legal

or factual argument that § 2244(d)(1)(C) applies and, without more, any argument under § 2244(d)(1)(C) fails.

### iii.   28 U.S.C. § 2244(d)(1)(D)

Under § 2244(d)(1)(D), the AEDPA limitation period may begin to run after judgment becomes final, starting on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This allows for tolling if some factual predicate is discovered that was not and could not have been previously discovered.

The evidence potentially giving rise to § 2244(d)(1)(D) tolling discussed by Petitioner includes his school records, low IQ, and his medical examinations from a severe car accident. (Dkt. No. 8.) Petitioner's trial concluded March 28, 2014. (Dkt. No. 16-5 at 5.) Petitioner attaches an exhibit showing an educational achievement of "2.6" (presumably between second and third grade) and IQ level of 73, which does not specify the date it was determined but the information was requested from state prison officials on October 12, 2020. (Dkt. No. 7, Ex. B, at 8-9.) Petitioner attaches evidence of his high school, middle school, and elementary school records, dating from 1990-2003. (Dkt. No. 7, Ex. C, at 10-25.)   Further, Petitioner attaches medical records from a car accident that occurred on March 7, 2013, which caused a traumatic brain injury, and according to Petitioner, resulted in memory loss. (Dkt. No. 7-1, Ex. D, at 26-53.) Petitioner notes that his Trial Attorney requested a mental evaluation before trial (*see* Dkt. No. 6-4 at 25-28), and that this evaluation concluded that Petitioner was incompetent to stand trial. (*See* Dkt. No. 8 at 4 ("Upon evaluation by Dr. Mary Elizabeth De Ferreire PH.D concluded [sic] to Defense counsel that Applicant was incompetent to stand trial; however, Dr. Ferreire was not called to testify to the veracity of applicant's mental history.").) Petitioner argues that the previously mentioned evidence constitutes evidence showing that he was incompetent to stand trial and "could

not consult with his counsel on important matters in which counsel knew of or should have known due to applicant's low IQ 73 and the fact applicant was sedated on medication due to head injury." (Dkt. No. 8 at 3.)

Unfortunately, none of the evidence presented is the kind of new, factual evidence required to toll the limitations period under § 2244(d)(1)(D) because it was known to the Petitioner before the limitations period expired and could have been presented by Petitioner prior to the expiration of the limitations period.   All the evidence presented is dated years before the trial, or at the latest, one year before the trial occurred.   Thus, there is no new evidence discovered by Petitioner after trial or after the expiration of the limitations period that would operate to toll the limitations period in Petitioner's favor. *See In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (noting that a claim under § 2244(d)(1)(D) is in reference to "the date the petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim.")

In Petitioner's response, Petitioner does not dispute or contest the dates provided on the medical records or educational records.   Nor does Petitioner argue that these records were unavailable to him at the time of trial.   In fact, in Petitioner's response, Petitioner states that his Trial Counsel knew of Petitioner's car accident but chose not to bring up the records at trial. (Dkt. No. 23 at 11.)   In sum, the evidence presented by Petitioner was both known and available to him prior to April 28, 2015, when the limitations period expired, and Petitioner's lack of diligence in promptly presenting the evidence does not justify his untimeliness.

### iv.  28 U.S.C. § 2244(d)(2)

Under section 2244(d)(2), the one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review … is pending."

28 U.S.C. § 2244(d)(2). Petitioner filed collateral proceedings at the state level, however, none of Petitioner's state applications for habeas corpus tolled the limitations period.

Petitioner's state filings cannot toll the one-year limitation period because Petitioner did not file his state court petitions until *after* the limitations period expired. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired" (emphasis original)); *see also Flores v. Quarterman*, 467 F.3d 484, 485-86 n.2 (5th Cir. 2006) (same) (citing *Scott*); *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) (same) (citing *Scott*). As previously stated, Petitioner did not file his state applications until 2020 and 2021, over five years after the expiration of the limitation period. Thus, the state habeas petitions do not toll the federal filing deadline because they were both filed several years past the April 28, 2015, federal filing deadline.[13] *See Scott*, 227 F.3d at 263.

### b. Equitable Tolling

In appropriate circumstances AEDPA's one-year statute of limitations can be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Unfortunately for Petitioner, he has not shown that he

---

[13] The filing of direct appeal to the Court of Appeals in December 2019 and the subsequent dismissal for lack of jurisdiction on December 3, 2020, does not toll the limitations period or, alternatively, act as point to begin calculating the one-year limitation to file a habeas petition. "Because this Court must look to the date on which the time for seeking direct review expired in determining the applicable limitation period, the disposition of [petitioner's] late appeal cannot serve as the date on which his limitations period began." *Lavarry v. Johnson*, No. 3:00-CV-2449-G, 2001 WL 376335, at *3 (N.D. Tex. Apr. 12, 2001), *report and rec. adopted*, No. 3-00-CV-2449-G, 2001 WL 484426 (N.D. Tex. May 2, 2001).

has acted diligently in pursuing his legal rights nor alleged an extraordinary circumstance preventing Petitioner from diligently pursing his rights.

For a petitioner to pursue his rights diligently, the petitioner must demonstrate "'reasonable diligence,' not 'maximum feasible diligence.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 653). Petitioner must allege specific attempts he has made to file his habeas petition prior to the expiration of the one-year statute of limitations or specific impediments preventing such timely filing. *See Ekwere v. Davis*, No. 7:19-CV-0092, 2020 WL 5219560, at *10-11 (S.D. Tex. Feb. 28, 2020) (holding that petitioner was not diligent in pursuing his claims where he did not attempt to contact the State Bar of Texas or his trial counsel until after the habeas filing deadline), *report and rec. adopted*, No. CV M-19-092, 2020 WL 5215408 (S.D. Tex. Sept. 1, 2020), *motion for relief from judgment denied*, No. CV M-19-092, 2021 WL 4484085 (S.D. Tex. Sept. 1, 2021); *Harrison v. Stephens*, No. CIV.A. H-14-2991, 2015 WL 350788, at *3 (S.D. Tex. June 3, 2015) (holding that petitioner is not eligible for equitable tolling because petitioner "did not diligently pursue habeas relief when he waited almost eleven months after expiration of the limitations period to file his state petition and over thirty months to file his Federal Petition"). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state or federal court), unsupported and unsupportable by anything else contained in the record, to be of evidentiary value." *Ekwere*, 2020 WL 5219560, at *10 (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

In this matter, Petitioner has not set forth any facts regarding how he has pursued his rights with any diligence prior to the filing of his state habeas petitions approximately five years after his conviction, and this federal habeas petition, filed approximately seven years after his conviction

14

became final in state court. *See Ekwere*, 2020 WL 5219560, at \*10-11; *Harrison*, 2015 WL 350788, at \*3.

Even when giving Petitioner the benefit of the doubt, equitable tolling does not operate in Petitioner's favor because Petitioner does not allege any extraordinary circumstance excusing his untimeliness. The Fifth Circuit has explained that extraordinary circumstances justifying equitable tolling must include "external factors beyond [petitioner's] control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (citations omitted). Thus, "[e]quitable tolling applies principally when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999); *see also Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. 2022) (same).

Overtime, courts have provided illustrations as to what does not constitute an extraordinary circumstance excusing delay. The inability to read or speak English does not warrant equitable tolling. *United States v. Morfin*, No. 3-03-CR-434M, 2007 WL 837276, \*3 (N.D. Tex. March 20, 2007) (citing *United States v. Polbo-Torres*, No. 3:02-CR-115-P(03), 2005 WL 81725, at \*2 (N.D. Tex. Jan. 13, 2005)). Limited access to a law library does not justify equitable tolling. *Id.* (citing *United States v. Teshima-Jiminez*, No. CRIM. 97-087, 1999 WL 600326, at \*2 (E.D. La. Aug. 5, 1999) ("lack of legal research material and assistance" is not "rare and exceptional circumstances" to justify equitable tolling)). "[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *see also Jones*, 22 F.4th at 491 ("[A] petitioner's failure to comply with state procedural law or general ignorance of the law do not qualify as extraordinary circumstances for purposes of equitable tolling."). Neither unfamiliarity with the legal process nor lack of legal representation

justify equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999). Even a failure to discover the significance of the operative facts does not constitute exceptional circumstances. *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998).

As for claims of mental illness and incapacity, such assertions will only justify tolling where it prevents a petitioner from managing his affairs or having awareness of his legal rights and the ability to act upon those rights. *Walker v. Quarterman*, No. CIV.A. L-08-2, 2009 WL 691961, at *4 (S.D. Tex. Mar. 9, 2009) (citing *Fisher*, 174 F.3d at 715). A petitioner must show that his mental disability prevented him from seeking habeas relief during the AEDPA statute of limitations period. *Walker*, 2009 WL 691961, at *4 (citing *Heidle v. Dretke*, No. 3-04-CV-2627-D, 2005 WL 81716, at *1 (N.D. Tex. Jan. 12, 2005), *report and rec. adopted*, No. 3-04-CV-2627-D, 2005 WL 465154 (N.D. Tex. Feb. 28, 2005)). Low IQ, standing alone, is insufficient to withstand a claim of equitable tolling. *Hughes v. Cockrell*, No.Civ.A.3:01CV2256-L, 2003 WL 21510812, at *4 (N.D. Tex. Mar. 31, 2003).

Petitioner's incompetency, or incapacity, argument hinges on his low IQ and brain injury, but Petitioner does not argue that his present untimely filing is the result of the cessation of said conditions. (Dkt. No. 8.) In other words, Petitioner does not provide any argument or reason regarding how his low IQ or brain injury prevented him from pursuing his legal rights until now. *See Taylor v. Dretke*, No. 3:03-CV-905-M, 2004 WL 2624674, at *2 (N.D. Tex. Nov. 17, 2004) (holding that where Petitioner did not submit anything "to demonstrate that he was not sufficiently competent during the one-year limitations period, other than his own unsworn and self-serving allegation" he was unable to meet his burden of establishing that his mental impairment interfered with his inability to file his § 2254 in a timely manner), *report and rec. adopted*, No. 3:03-CV-905-M, 2004 WL 2937409 (N.D. Tex. Dec. 14, 2004); *see also Barrett v. Epps*, No. CIVA

4:06CV70 TSLLRA, 2007 WL 689586, at *3 (S.D. Miss. Feb. 28, 2007) (noting that a petitioner "must 'sufficiently allege facts indicating that his incompetence impeded him from asserting his legal rights.'" (quoting *Smith v. Johnson*, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. 2001) (per curiam) (unpublished))).

Despite Petitioner's argument that he was incompetent at the time of trial, Petitioner has not alleged any exceptional circumstances undermining Petitioner's ability to understand or pursue his legal rights diligently that would justify Petitioner's failure to timely file his petition or otherwise toll the statute of limitations in his favor. (Dkt. No. 8.)  In sum, Petitioner could have pursued his legal rights within the limitations period because he has not shown any evidence indicating otherwise.  If anything, Petitioner has shown that he was capable of pursuing his legal rights in a timely fashion because, according to the evidence presented, Petitioner's mental capacity remains unchanged since 2013 and Petitioner is presently capable of pursuing his legal rights.  Without more, Petitioner has failed to show both due diligence in pursuing his legal rights and an extraordinary circumstance justifying his untimeliness.  As such, equitable tolling does not apply to excuse Petitioner's untimeliness.

### c. Actual Innocence

A claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitation period has elapsed.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  However, "tenable actual-innocence gateway pleas are rare."  *Id.*  To meet the threshold requirement and "invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Further, an "[u]nexplained delay in presenting new evidence bears on the

determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at

399. In other words, "[a] court may consider how the timing of the submission and the likely

credibility of a [petitioner's] affiants bear on the probable reliability of … evidence [of actual

innocence]." *Id.* at 399 (quoting *Schlup*, 513 U.S. at 332).

This standard under *Schlup* is "demanding" and "[t]he gateway should open only when a

petition presents 'evidence of innocence so strong that a court cannot have confidence in the

outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316.) The Court in *Schlup* described

the evidence required to meet said burden:

> To be credible, [an actual innocence] claim requires petitioner to
> support her allegations of constitutional error with new reliable
> evidence – whether it be exculpatory scientific evidence,
> trustworthy eyewitness accounts, or critical physical evidence – that
> was not presented at trial.

*Schlup*, 513 U.S. at 324.

To be clear, "[i]n *Schlup v. Delo*, the Supreme Court distinguished freestanding,

*substantive* innocence claims—in which a petitioner asserts that her innocence entitles her to

habeas relief—from *procedural* innocence claims—in which a petitioner seeks to 'have [her]

otherwise barred constitutional claim considered on the merits.'" *Coleman v. Thaler*, 716 F.3d

895, 908 (5th Cir. 2013) (quoting *Schlup*, 513 U.S. at 315)). The former is referred to as "*Herrera*-

type" claim in reference to *Herrera v. Collins*, 506 U.S. 390 (1993), and the latter as "*Schlup*-type

claim." *See Schlup*, 513 U.S. at 314 (noting that Schlup's claim of innocence is procedural, not

substantive, because "[h]is constitutional claims are based not on his innocence, but rather on his

contention that the ineffectiveness of his counsel, . . ., and the withholding of evidence by the

prosecution, . . ., denied him the full panoply of protections afforded to criminal defendants by the

Constitution." (citations omitted)).   Thus, the evidence presented by Petitioner must be sufficient to "raise[] sufficient doubt about [Petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error" and thus justify a review of the merits of the constitutional claims. *Id.* at 317.

Petitioner argues that his claim resembles a *Schlup*-type claim because the evidence showing actual innocence is accompanied by a constitutional error, specifically, ineffective assistance of counsel. (Dkt. No. 8 at 8-9.) Petitioner argues that the evidence of his low IQ and brain injury rendered him incompetent to stand trial and "establishes sufficient doubt about his guilt to justify the conclusion that his conviction is a miscarriage of justice." (*Id.*)  Further, in support of Petitioner's argument, he states that the "constitutional error, ineffective assistance of counsel, 'probably resulted' in the conviction of applicant who is actually innocent." (*Id.*)  In sum, Petitioner is arguing that Trial Counsel's failure to tell the court about Petitioner's car accident at the time of trial, and failure to tell the court of Petitioner's incompetency and inability to effectively communicate with Trial Counsel, resulted in the conviction despite his innocence. (*Id.* at 9-12.) Essentially, Petitioner is arguing that the outcome of the trial is unfair because his Trial Counsel was ineffective based on the previously mentioned reasons.

Respondent argues that the "new evidence" presented by Petitioner is simply an argument for an ineffective assistance of counsel claim. (Dkt. No. 15 at 11.)  As such, this is not the kind of "new evidence" that supports an actual innocence claim under *Schlup*. (*Id.*)  Specifically, Respondent argues that the evidence presented by Petitioner is not considered newly discovered evidence, rather it merely establishes a "legal argument that address[es] the 'legal insufficiency of [Petitioner's] underlying conviction and not factual innocence." (*Id.* (internal court citations omitted).)  Thus, it is not the kind of new and reliable evidence required to support a "*Schlup-*

type" claim. (*Id.*)

Petitioner responds by arguing that Trial Counsel's failure to notify the court about his car accident and low IQ constitutes ineffective assistance of counsel and resulted in his conviction. (Dkt. No. 23 at 8-9, 11.) And, once again, Petitioner continues to assert that this supports an actual innocence claim under *Schlup*. (*Id.* at 7-8.) Further, Petitioner states that a *Schlup*-claim relies on the validity of the underlying *Strickland* claim (ineffective assistance of counsel standard), which establishes Petitioner's innocence. (*Id.* at 7.)

Unfortunately for Petitioner, Respondent is correct that Petitioner presents no new reliable evidence forming the basis of an actual innocence claim under *Schlup*. *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). As previously stated, the evidence presented by Petitioner was known at the time of trial. Specifically, the underlying facts of the evidence presented occurred either long before trial or, at the latest, in 2013, a year before trial. (Dkt. No. 8 at 2-3); *see also Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("Evidence does not qualify as "new" under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" (quoting *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008))).

Further, there was no new *reliable* factual evidence contained in Petitioner's recount of the facts surrounding his criminal conviction showing actual innocence. (Dkt. No. 8 at 3-5.) Petitioner simply recounts his version of the facts occurring the day of the incident, which were presumably known to him at the time he was arrested and informed of the allegations as well at time of trial. Petitioner claims he was kidnapped, essentially forcing him into the criminal episode,

and that he did not personally shoot anyone or have any involvement outside of being merely present. (Dkt. No. 6-5 at 1-4). "Applicant was made to go a long with a crime that he did not commit or had intentions of committing." (Dkt. No. 23 at 5.) "When the guys who shot or shot at the police, they shot them because of what they had in mind and applicant had nothing to do with it." (*Id*.) Even if Petitioner's statement is considered "newly discovered evidence," there is nothing establishing that Petitioner's statement is credible or reliable. *See McQuiggin*, 569 U.S. at 399 (noting that untimeliness does bear on credibility of evidence proffered to show actual innocence); *see also McGowen v. Thaler*, 717 F. Supp. 2d 626, 663 (S.D. Tex. 2010) ("A petitioner, however, must still show the evidence is credible and reliable." (citing *Schlup*, 513 U.S. at 324)).

Finally, as explained, the facts relating to Petitioner's *Strickland* argument are irrelevant to determining whether Petitioner has overcome the procedural bar under an actual innocent theory. Thus, the claim that Trial Counsel should have addressed the court and jury as to Petitioner's brain injury from the vehicular accident and/or his IQ does not support a claim of actual innocence. For sake of clarity, Petitioner must first show newly discovered evidence that establishes his actual innocence, which operates to overcome the procedural bar – i.e., statute of limitations. After overcoming the procedural hurdle, then the court can consider Petitioner's underlying constitutional claim – ineffective assistance of counsel. *See Azamar v. Davis*, No. 7:18-CV-00319, 2019 WL 4739385, at *6 (S.D. Tex. June 5, 2019) ("none of Petitioner's claims of … ineffective assistance of counsel are considered newly discovered evidence to support an actual-innocence claim. This is true because these claims are legal arguments that address the 'legal insufficiency' of his underlying conviction and not factual innocence… a credible showing of actual innocence only gets Petitioner past the procedural bar – the statute of limitations – to have the Court consider

the merits of the *constitutional* claims.") (emphasis in original), *report and rec. adopted sub nom.*
*Prieto Azamar v. Davis*, No. CV M-18-319, 2019 WL 4736930 (S.D. Tex. Sept. 27, 2019).  In
other words, Petitioner's claim of ineffective assistance of counsel is insufficient to establish
"actual innocence" as it pertains to overcoming the procedural time bar prohibiting judicial review
of Petitioner's habeas claim.  And, Petitioner's statement of the events, self-serving and not new,
would have been available as a defense at the time of trial – i.e., the argument that Petitioner was
merely present during the shootings.

Therefore, the evidence presented by Petitioner is not sufficient to meet the *Schlup*
requirement because Petitioner has not shown new factual evidence supporting a claim of actual
innocence.

### III.      Ineffective Assistance of Counsel

Petitioner claims that his Trial Counsel was ineffective in his representation for failing to
investigate Petitioner's mental capacity at the time of trial and Trial Counsel's failure to inform
the jury about Petitioner's mental capacity.  Considering there is no basis for statutory or equitable
tolling, and because this § 2254 petition comes nearly seven years after judgment became final for
habeas review, Petitioner's habeas claims of ineffective assistance of counsel are time barred for
review.

### IV.      Request for Transcripts

In Petitioner's response to Respondent's motion to dismiss, Petitioner requests copies of
the trial transcripts involving Petitioner's state conviction to review any constitutional errors that
occurred at trial.  (Dkt. No. 23 at 1.)  However, Petitioner also notes that the transcripts may not
be necessary for Petitioner's claims "since the propositions for which they are cited are probably
not disputed."  (*Id.*)  For the reasons stated above, Petitioner's constitutional claims, if any, are

barred from review.  Further, at this point, Petitioner has failed to state any nonfrivolous issue necessitating review of the requested transcripts.  Thus, Petitioner's request should be denied.

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, "[t]he judge may order the respondent furnish other parts of existing transcripts or that parts of un-transcribed recordings be transcribed and furnish."  R. Gov. § 2254 Cases 5(c).  However, "there is nothing in the statute or in the Habeas Corpus Rules that requires a district court to review a state court record in its entirety." *Dillard v. Blackburn*, 780 F.2d 509, 513-14 (5th Cir. 1986).  Further, "[w]hether it is necessary to examine all of the state court proceedings is a decision left to the discretion of the district court judge." *Id.*; *see also Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (same).

Petitioner has not established any issue requiring review of trial transcripts, and as stated by Petitioner, the present petition does not involve any dispute regarding the trial record.  Further, Petitioner requests transcripts to assess constitutional errors at trial; however, any constitutional deficiencies are time barred for review and such filing would be considered frivolous. *See Cooks v. Earles*, No. 14-3200-CV-S-MDH-P, 2015 WL 4378226, at *1 (W.D. Mo. July 15, 2015) (denying request for transcripts because "a decision on the procedural default and cognizability issue would preclude review of Petitioner's claims on the merits"); *see also Parker v. Kearney*, No. CIV.A. 01-739-SLR, 2002 WL 31102746, at *5-6 (D. Del. Sept. 18, 2002) (denying request for transcripts because claim of ineffective assistance of counsel is procedurally barred from review and "the requested transcripts would have no bearing on the court's" decision).

Because Petitioner has failed to allege any nonfrivolous issue necessitating review of the trial transcripts, Petitioner's request for such records should herein be denied.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, Petitioner's claims are barred by the relevant statute of limitations and are not subject to equitable tolling or a demonstrative claim that failure to consider the underlying claims will result in a fundamental miscarriage of justice; therefore, the undersigned recommends that Respondent's Motion to Dismiss (Dkt. No. 15) be **GRANTED**. It is recommended that Petitioner's requests for transcripts (Dkt. 23 at 1) be **DENIED** and Petitioner's § 2254 petition (Dkt. No. 6) be **DISMISSED with prejudice**.

Finally, Petitioner's § 2254 case should be closed.

### *Certificate of Appealability*

It is recommended that the District Court deny a Certificate of Appealability. Petitioner may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The § 2254 rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Gov. Sec. 2254 Cases 11. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability ("COA").

A COA "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When a claim is denied on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner may satisfy this requirement by showing, in the alternative, that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537

U.S. at 327.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Here, Petitioner's habeas petition is being denied for none of the statutory exemptions to the one-year time limitation apply, equitable tolling is inapplicable, and Petitioner cannot establish a miscarriage of justice based on claim of actual innocence.  Reasonable jurists would not find it debatable that Petitioner has not set forth a valid claim of denial of a constitutional right or that the court was incorrect in its procedural ruling as to each of the claims being time-barred from habeas review.  Therefore, it is recommended that the District Court deny a COA.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Petitioner and counsel for Respondent.

**SIGNED** at McAllen, Texas, this 2nd day of February, 2023.

Juan F. Alanis
United States Magistrate Judge